UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PIYARATH KAYARATH,

Petitioner,

v.

ANDRE MATEVOUSIAN, Warden,

Respondent.

No. 1:15-cv-01157-LJO-SKO HC

**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT THE COURT DISMISS THE PETITION FOR LACK OF JURISDICTION**

Petitioner is a federal prisoner proceeding p*ro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. He seeks to have his conviction and sentence set aside as illegal following the U.S. Supreme Court's recent holding in *Rosemond v. United States*, 134 S.Ct. 1240 (2014). He also contends that he is actually innocent and entitled to relief under *Burrage v. United States*, 134 S.Ct. 881 (2014).

Respondent has moved to dismiss the case for lack of jurisdiction. He contends that Petitioner may not proceed under 28 U.S.C. § 2241 since Petitioner, who carried a handgun in the course of the robbery that gave rise to his conviction, cannot prove that he is actually innocent of aiding and abetting murder. The undersigned agrees with Respondent's analysis and recommends that the Court dismiss the petition for lack of jurisdiction.

**I. The Underlying Crime**

The Tenth Circuit opinion in the appeal of a codefendant set forth the factual background of the underlying crime:

> Mr. Chanthadara and four codefendants—Phouc Nguyen, Khammouk Namphengsone, Piyarath Kayarath, and Somlith Soukamneuth—gathered at Mr. Namphengsone's apartment during a party. The five decided to rob the Mandarin Chinese Restaurant in hopes of getting cash and gold jewelry.
>
> The five men left the party in two cars, one stolen and one borrowed. They had two guns amongst them: Mr. Kayarath carried a 9mm pistol (the murder weapon) and Mr. Nguyen carried a .32 caliber revolver. When the five arrived at the targeted restaurant, they noted that customers were still eating and decide to wait until only the owners were present.
>
> To pass time, the men continued on to a nearby shopping mall. In the mall parking lot, Mr. Nguyen broke into several cars. When one of the car owners confronted him, Mr. Nguyen punched him several times, and Mr. Kayarath hit him on the head with the butt of the 9mm pistol.
>
> Sufficient time having elapsed, the friends split up. Mr. Soukamneuth waited in a nearby parking lot in the borrowed car with which they planned to drive away from the robbery. The other four men drove the stolen car to the restaurant. Approaching the restaurant, Mr. Nguyen donned a black ski mask. The three others remained unmasked.
>
> Mr. Mark Sun, the owner of the Mandarin Chinese Restaurant, testified that he first became aware of the robbery when he heard a loud crash in the front. As he went to investigate, a masked man, Mr. Nguyen, put a knife to his throat and forced him to the cash register. He opened the register and emptied its contents.
>
> Mrs. Barbara Sun (a co-owner of the restaurant), a waiter, and the Sun's two children were also present in the restaurant. Mr. Namphengsone bound Mrs. Sun and Mr. Wong with shoelaces behind the bar. The robbers ordered the children to lay down. Mr. Kayarath guarded the four at gunpoint. Mr. Nguyen grabbed Mrs. Sun by her hair and neck and dragged her upstairs to a safe, which had been installed in the restaurant before the Suns bought it. Mr. Chanthadara accompanied them, and Mr. Kayarath soon followed. The safe was locked and empty, and the Suns did not know the combination. The robbers knew only that it was locked.
>
> Mr. Namphengsone remained downstairs guarding the four prisoners. The only evidence of the sequence of events leading to Mrs. Sun's death came from Mr. Namphengsone, who testified that within minutes of having followed Mr. Nguyen upstairs, Mr.

> Chanthadara returned downstairs to check on Mr. Namphengsone. At that time, Mr. Chanthadara carried the 9mm pistol. Satisfied with the situation downstairs, he returned upstairs.
>
> Some time later, the three men returned from upstairs. Now, Mr. Nguyen carried the .32 caliber pistol, Mr. Chanthadara carried the 9mm pistol, and Mr. Kayarath was unarmed. Mr. Namphengsone heard Mr. Nguyen announce, "He shot her."
>
> Leaving the restaurant, Mr. Chanthadara tried to retrieve something from a glass display case and tipped it over. His palm print was later matched to a palm print on the broken glass of the case.
>
> The four men met Mr. Soukamneuth, still waiting at the borrowed car. Mr. Soukamneuth testified that Mr. Chanthadara held the 9mm pistol. He also testified that, on the ride back to Mr. Namphengsone's apartment, Mr. Nguyen, Mr. Namphengsone, and Mr. Kayarath were all yelling at Mr. Chanthadara. According to Mr. Soukamneuth, Mr. Chanthadara responded by putting the 9mm to his own head and asking whether he should shoot himself. Mr. Soukamnueth further stated that he did not know at the time why the other men were angry with Mr. Chanthadara, but "later on" he determined it was because Mr. Chanthadara 'shot the lady." Finally, before reaching the apartment, Mr. Chanthadara threw the 9mm pistol into a river.
>
> Mr. Namphengone initially told FBI investigators that he heard nothing about anyone being hurt and that the 9mm pistol was taken back to his apartment, not thrown off the bridge. He subsequently changed this story to correspond with Mr. Soukamneuth's. FBI investigators would later search the area, but the gun was never recovered.
>
> Mrs. Sun's body was discovered upstairs in the restaurant in front of the locked safe. She had been shot five times. Four of the gunshot wounds would have been fatal by themselves. Mrs. Sun had also been beaten. Nearby was a broken pool cue, which tested positive for traces of Mrs. Sun's blood.
>
> *United States v. Chanthadara*, 230 F.3d 1237, 1244-46 (10th Cir. 2000) (footnotes omitted).

## II. <u>Procedural Background</u>

Petitioner was charged in a two-count superseding indictment. *See* Second Superseding Indictment, *United States v. Chanthadara et al.*, No. 6:94-CR-10128-WEB-2 (D. Kan.), Doc. 168, reproduced at Docs. 15-1 and 15-2. Count one charged Petitioner with robbery affecting interstate commerce in violation of 18 U.S.C. § 1951 (the "Hobbs Act") and with aiding and abetting the robbery. Count two charged him with carrying and using a firearm in the course of the robbery in violation of 18 U.S.C. § 924(c)(1), and with causing the death of another person in

violation of 18 U.S.C. § 924(j). Count two also charged Petitioner with aiding and abetting the crimes alleged therein.

On January 30, 1997, a jury convicted Petitioner of both counts. Petitioner moved for a new trial, which the Court denied on April 11, 1997. The Tenth Circuit Court of Appeals denied his direct appeal in June 1998. *United States v. Kayarath*, 162 F.3d 1174 (table), 1998 WL 756807 (10th Cir. Oct. 21, 1998) (No. 98-3084). The District Court denied his first habeas petition, brought pursuant to § 2555(2) & (3), in July 2001. *See* Memorandum and Order, *United States v. Kayarath* (D. Kan. July 12, 2001) (No. 6:94-cr-10123-MLB), reproduced at Doc. 15-6.

On September 11, 2014, the Tenth Circuit denied Petitioner's motion for authorization to file a second or successive 28 U.S.C. § 2255 petition based on the holding in *Rosemond*. *See* Doc. 1 at 43-44. The Tenth Circuit stated, in pertinent part:

> Section 2255(h)(2) permits authorization when a second or successive motion relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." But *Rosemond* does not meet this standard because it involved an issue of statutory interpretation, not a new rule of constitutional law, *see In re Shines*, 696 F.3d 1330, 1332 (10th Cir. 2012) (*per curiam*) (explaining that cases concerning statutory interpretation cannot meet the standard in § 2255(h)(2)), and the Supreme Court has not directed that *Rosemond* should apply retroactively to cases on collateral review, *see In re Payne*, 733 F.3d 1027, 1029-30 (10th Cir. 2013) (explaining that to meet § 2255(h)(2)'s requirement the Supreme Court must hold that a decision is retroactively applicable to cases on collateral review).
>
> Doc. 1 at 43-44 (*footnote omitted*).

The order noted that Petitioner himself indicated that the *Rosemond* decision "announced a new statutory interpretation." *Id.* at 43, n.1.

On July 28, 2015, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in this Court, repeating his *Rosemond* claim. Respondent moved to dismiss the petition on November 23, 2015.

## III. Discussion

### A. Challenging Validity of Conviction Under § 2241

A federal court may not consider an action over which it has no jurisdiction. *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000). Respondent contends that because Petitioner

cannot prove the elements necessary to bring an action challenging his conviction under § 2241, the District Court has no jurisdiction over the petition.

As Petitioner himself concedes (*see* Doc. 1 at 19), a federal prisoner who wishes to challenge the validity or constitutionality of his conviction or sentence must do so by filing a motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Only the sentencing court has jurisdiction to entertain a § 2255 motion. *Id.* at 1163. Having previously prosecuted an unsuccessful petition under § 2255, Petitioner first sought authorization from the 10th Circuit, as required by 28 U.S.C. § 2255(h). Although he conceded in the § 2255 action that *Rosemond* merely announced a new interpretation of statutory law, Petitioner argued that he could not have been convicted of aiding and abetting Mrs. Sun's murder if *Rosemond* had applied.

When a petitioner seeks authorization to bring a second or successive § 2255 petition based on a change in applicable law, "a court of appeals may authorize a second or successive § 2255 motion only if the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006). Because the Supreme Court did not announce a new rule of constitutional law that was applicable retroactively, the 10th Circuit denied authorization.

"The general rule is that a motion under 28 U.S.C. § 2255 is the exclusive means by which a federal prisoner may test the legality of his detention and that restrictions on the availability of a § 2255 motion cannot be avoided through a petition under 28 U.S.C. § 2241." *Stephens*, 464 F.3d at 897 (citation omitted). An exception to the rule, commonly referred to as the "escape hatch" or the "savings clause," "permits a federal prisoner to file a habeas corpus petition pursuant to § 2241 to contest the legality of a sentence where his remedy under § 2255 is inadequate or ineffective to test the legality of his detention." *Id.* (citations and internal quotations omitted). "Under the escape hatch of § 2255, a federal prisoner may file a § 2241 petition under the escape hatch when the prisoner (1) makes a claim of actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim." *Marrero v. Ives*, 682 F.3d 1190, 1192 (9th Cir. 2012) (internal quotations omitted). The petitioner bears the burden of

proving that the remedy available under § 2255 is inadequate or ineffective. *Redfield v. United States*, 315 F.2d 76, 83 (9th Cir. 1963). "If the prisoner's claims qualify for the escape hatch of § 2255, the prisoner may challenge the legality of a sentence through a § 2241 petition in the custodial court." *Harrison v. Ollison*, 519 F.3d 952, 956 (9th Cir. 2008).

"To establish actual innocence for the purposes of habeas relief, a petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir. 2011) (citations and internal quotations omitted). "A petitioner is actually innocent when he was convicted for conduct not prohibited by law." *Id.*

"In determining whether a petitioner had an unobstructed procedural shot to pursue his claim, we ask whether petitioner's claim 'did not become available' until after a federal court decision." *Harrison*, 519 F.3d at 960 (quoting *Stephens*, 464 F.3d at 898). To do this, a court must consider "(1) whether the legal basis for petitioner's claim 'did not arise until after he had exhausted his direct appeal and first § 2255 motion;' and (2) whether the law changed "in any way relevant" to petitioner's claim after that first § 2255 motion." *Harrison*, 519 F.3d at 960 (quoting *Ivy v. Pontesso*, 328 F.3d at 1060-61).

"An intervening court decision must 'effect a material change in the application of applicable law' to establish unavailability.'" *Alaimalo*, 645 F.3d at 1047 (quoting *Harrison*, 519 F.3d at 960. "[A] decision that simply 'provides further clarification' of the statute of conviction without 'materially vary[ing ] from the statutory construction set forth' in previous case law does not effect such a change." *Alaimalo*, 645 F.3d at 1048 (quoting *Harrison*, 519 F.3d at 960).

### B. *Rosemond* and a Defendant's Intent to Commit All Charged Offenses

A person who directly "commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission is punishable as a principal." 18 U.S.C. § 2(a). According to Petitioner, *Rosemond* reinterpreted § 2(a) to require the government to "establish an intent that goes to the specific and entire crime charged." *Rosemond*, 134 S.Ct. at 1248. Petitioner reasons that, since he and his co-defendants did not intend that anyone would be

///

killed in the course of their robbing the Mandarin Chinese Restaurant, he was wrongly convicted of aiding and abetting Mrs. Sun's murder if the *Rosemond* holding is applied to him.

*Rosemond* addressed a drug deal gone bad. Vashti Perez drove to a local park to sell a pound of marijuana. Justus Rosemond and Coby Painter accompanied her. One man sat in the front passenger seat and one sat on the back seat, but witnesses disputed which man sat in which position. After inspecting the marijuana in the back seat, the putative purchaser punched the man seated in the back and fled with the marijuana without paying. One of the men jumped from the vehicle, fired multiple shots from a semiautomatic handgun, and then got back in the car before Ms. Perez gave chase. Witnesses disputed which man was the shooter. Rosemond maintained that he was unarmed and had no knowledge that Painter had a gun. He argued that he could not be convicted of aiding and abetting the gun offense since he had agreed only to participate in the drug sale and had no intent to use a firearm in the transaction.

"'A defendant can be convicted as an aider and abettor without proof that he participated in each and every element of the offense.'" *Rosemond*, 134 S.Ct. at 1246 (quoting *United States v. Sigalow*, 812 F.2d 783, 785 (2d Cir. 1987). "The division of labor between two or more confederates has no significance: A strategy of 'you take that element, I'll take this one' would free neither party from liability." *Rosemond*, 134 S.Ct. at 1247.

This traditional analysis of aiding and abetting assumes that the defendant proceeded in the criminal "venture with full knowledge of the circumstances constituting the charged offense." *Id.* at 1249-50. For example, an "unarmed driver of a getaway ha[s] the requisite intent to aid and abet armed bank robbery if he 'knew' that his confederates would use weapons in carrying out the crime." *See id.* at 1250 (setting forth multiple cases illustrating this principle). The Court held that the same principle applied to Rosemond's case: "An active participant in a drug transaction has the intent needed to aid and abet a § 924 violation when he knows that one of his confederates will carry a gun." *Id.*

In stating the requirement that the State prove intent as to the entire crime, the Supreme Court was addressing the two separate crimes charged against Rosemond: a drug trafficking offense and a violation of 18 U.S.C. § 924(c), which prohibits using or carrying a firearm during

or in relation to a crime of violence or a drug trafficking offense. In support of his petition to this Court, Petitioner argues that he and his codefendants did not intend to murder anyone. His argument relies on the Supreme Court's statement that "[t]he government must establish an intent that goes to the specific and entire crime charged." *Rosemond*, 134 S.Ct. at 1248.

The quotation on which Petitioner relies is only a part of the Court's explanation of how to consider whether a defendant has aided or abetted a crime, in violation of § 2, when two separate offenses are charged:

> [A]n aiding and abetting conviction requires not just an act of facilitating one or another element, but also *a state of mind extending to the entire crime*. And under that rule, a defendant may be convicted of aiding and abetting a § 924(c) violation only if his intent reaches beyond a simple drug sale, to an armed one. [The a]iding and abetting law's intent component—to which we now turn—thus preserves the distinction between assisting the predicate drug trafficking crime and assisting the broader § 924(c) offense.
>
> *Rosemond*, 134 S.Ct. at 1248 (emphasis added).

Thus, applying the *Rosemond* analysis to Petitioner's case requires a court to determine whether Petitioner intended both to participate in a robbery and to participate in an armed robbery. The answer is evident: Petitioner carried a 9mm handgun when he and his confederates proceeded with their plan to rob the Mandarin Chinese Restaurant. On that basis, this case is distinguishable from *Rosemond*, in which the identity of the shooter was disputed and Rosemond maintained that he neither carried, nor knew that any confederate carried, a firearm into the planned drug transaction. Petitioner's intent to commit an armed robbery prevents his proving actual innocence under the *Rosemond* analysis.

**C. <u>Felony Murder</u>**

Petitioner is not only claiming actual innocence of the § 924(c) offense, however. Petitioner assumes that *Rosemond* prevents his being convicted of Mrs. Sun's murder under § 924(j), since neither he nor his confederates intended to kill or injure anyone in the course of the armed robbery. Nothing in the *Rosemond* decision supports Petitioner's conclusion that the Supreme Court abolished felony murder. The applicable federal statutes provide:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—

> (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life . . . . .
>
> 18 U.S.C. § 924(j).
>
> Murder is the unlawful killing of a human being with malice aforethought. Every murder . . . committed in the perpetration of, or attempt to perpetrate, any . . . robbery . . . is murder in the first degree.
>
> 18 U.S.C. § 1111(a).

Since no one was killed in the drug transaction in which Rosemond participated, the Court in that case had no reason to address the application of both §§ 924(j) and 1111(a). Nonetheless, the Court emphasized its intent that when a defendant is aware that his confederates will be armed during a drug transaction or a violent crime, traditional principles of accomplice liability will apply:

> An active participant in a drug transaction has the intent needed to aid and abet a § 924(c) violation when he knows one of his confederates will carry a gun. In such a case, the accomplice has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope—that the plan calls not just for a drug sale, but for an armed one. In doing so, he has chosen . . . to align himself with the illegal scheme in its entirety—including its use of a firearm. And he has determined . . . to do what he can to "make [that scheme] succeed." *Nye & Nissen [v. United States*, 336 U.S. 613, 619 (1949)]. He thus becomes responsible, in the typical way of aiders and abettors, for the conduct of others. He may not have brought the gun to the drug deal himself, but because he took part in that deal knowing a confederate would do so, he intended the commission of a § 924(c) offense—*i.e.*, an armed drug sale.
>
> *Rosemond*, 134 S.Ct. at 1249.

By carrying a gun, Petitioner established his intent to join in the illegal scheme in its entirety, including the use of firearms. When an individual participates in a robbery that results in a death, the individual is guilty of felony murder. *See Schad v. Arizona*, 501 U.S. 624, 640-41 (1991). The participant need not have entered into the robbery with the specific intent that someone be murdered: He need only have intended to commit the underlying crime, in this case, armed robbery. *Id.* Petitioner not only participated in the planning and robbery of the Mandarin Chinese Restaurant, he and his confederates agreed to arm themselves, and Petitioner himself

carried an automatic handgun into the restaurant. Thus, Petitioner's belief that the decision in *Rosemond* insulates him from liability for felony murder is misplaced.

**D. *Burrage* Does Not Apply in This Case**

Finally, Petitioner contends that he is actually innocent under the but-for cause of death doctrine articulated in *United States v. Burrage*, 134 S.Ct. 881 (2014). The *Burrage* causation doctrine does not apply to this case.

Marcus Burrage sold heroin to Joshua Banka, a long-time drug user. Banka died. The evidence revealed that when Banka died, he had consumed not only the heroin purchased from Burrage, but also other substances that Burrage had not provided to him. Medical experts testified that Banka might have died even if he had not taken the heroin that he had purchased from Burrage. A jury convicted Burrage, and the trial court sentenced him to twenty years' imprisonment, applying the sentence enhancement provisions of 21 U.S.C. § 841(b)(1)(C). The U.S. Supreme Court reversed the sentence, holding that "where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." 134 S.Ct. at 892.

The case before this Court presents no issue of causation. Mrs. Sun died as a result of gunshot wounds inflicted in the course of the armed robbery in which Petitioner participated. Application of *Burrage* cannot render Petitioner actually innocent.

**IV. Certificate of Appealability**

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to
>
> review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

///

> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability when the prisoner shows “that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.” *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation omitted). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the undersigned recommends that the Court decline to issue a certificate of appealability.

**V. Conclusion and Recommendation**

Because Petitioner cannot establish actual innocence, this Court lacks jurisdiction to consider his petition for writ of habeas corpus under 28 U.S.C. § 2241. Accordingly, the undersigned recommends that the Court dismiss the petition for lack of jurisdiction and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 19, 2016**

**/s/ Sheila K. Oberto**
UNITED STATES MAGISTRATE JUDGE